

**SIGNED this 3rd day of June, 2011**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

STETSON PUNGWA NDHLOVU,                     No. 08-10053
                                            Chapter 13

          Debtor;

STETSON PUNGWA NDHLOVU,

          Plaintiff,

v.                                          Adversary Proceeding
                                            No. 08-1055

SOUTHSTAR FUNDING, LLC;
RESIDENTIAL FUNDING COMPANY,
LLC and HOMECOMINGS FINANCIAL,

          Defendants.

**MEMORANDUM**

Plaintiff Stetson Ndhlovu ("Plaintiff" or "Debtor") brings this adversary proceeding against SouthStar Funding, LLC ("SouthStar Funding"), Residential Funding Company, LLC, ("Residential Funding") and Homecomings Financial for breach of contract, violation of the Georgia Fair Business Practice Act, GA. CODE ANN. § 10-1-391, *et seq.* ("FBPA"), and wrongful foreclosure.  *See* [Doc. No. 1, Complaint].[1]  On January 8, 2009 this court dismissed SouthStar Funding, LLC from this proceeding.  [Doc. No. 19].  In his complaint the Plaintiff asks for a temporary injunction, an order declaring a foreclosure sale void with title remaining in the Plaintiff, and damages, including attorneys' fees and exemplary damages.

Defendants Residential Funding and Homecomings Financial (collectively "Defendants") now move for summary judgment dismissal of all of the claims pending against them.  [Doc. No. 60].  The Plaintiff provided the court a belated response in opposition to the motion for summary judgment on May 13, 2011 that failed to provide any evidentiary support for the Plaintiff's allegations of fact.  [Doc. No. 65].  The Plaintiff's response also failed to include a response to the Defendants' statement of undisputed material facts as required by this court's local rules. E.D. Tenn. LBR 7056-1(b).  On May 17, 2011 the court ordered the Plaintiff to submit evidentiary support for his response to the Defendants' summary judgment motion and provided the Defendants with an opportunity to reply to the Plaintiff's response.  [Doc. No. 66].  The Plaintiff submitted an amended response and additional evidentiary materials on May 24, 2011, and the Defendants submitted additional materials on May 24, 2011, May 25, 2011, and May 27, 2011.  [Doc. Nos. 69-72, 75].  The Plaintiff also submitted a belated response to the Defendants' statement of undisputed facts.  [Doc. No. 73].  The Defendants' motion is now ripe for this court's review.

---

[1] All citations to the court's docket entries are for the docket pertaining to Adversary Proceeding 08-ap-1055, unless otherwise noted.

The court has reviewed the motion, the parties' briefing, the record, and the applicable law and now makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The court determines that the Defendants' motion for summary judgment will be **GRANTED**.

I.      **Factual Background**

A.      **Assignment of Original Note to Residential Funding**

The record reveals the following undisputed facts.  On June 14, 1999 the Debtor signed a note ("Original Note") obligating him to pay SouthStar Funding a principal amount of $105,600 with a yearly interest rate of 12.125%.  [Doc. No. 61-2].  The Original Note listed the relevant property address as 1572 Clements Road, Rocky Face, Georgia 30740 (the "Property").  *Id.* The Original Note specifically states the borrower will be in default if he "does not pay the full amount of each monthly payment on the date that it is due." *Id.* at 1, ¶ 6. It provided for late charges of 5% on any payment that was more than 15 days late.  *Id.* The borrower was also obligated to pay all costs and expenses in enforcing the note.  *Id.* at 2. The Original Note also provided that "I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under the Note is called the 'Note Holder.' " *Id.*  On the same date the Debtor signed a security deed ("Security Deed") listing SouthStar Funding as the lender and granting the lender a security interest in the Property.  [Doc. No. 61-3].

On June 16, 1999 SouthStar Funding assigned its rights in the Plaintiff's Security Deed and Original Note to Bank One, National Association ("Bank One").  [Doc. No. 61-1, Declaration of Scott Zeitz in Support of Motion for Summary Judgment ("Zeitz Decl."), ¶ 8]; [Doc. No. 61-4]. The president and vice president of SouthStar Funding both signed the assignment. [Doc. No. 61-4].  On December 14, 1999 Bank One filed and recorded in the Superior Court Clerk's office in Walker County, Georgia the Assignment of Deed to Secure Debt dated June 16, 1999 in

Deed Book 952, pages 645-46.  *Id.*

The record further reveals that "[a]t the time the Security Deed and Note were assigned from SouthStar to Bank One, SouthStar executed an Allonge (the "Allonge"), attaching it to the Note and endorsing the Note in blank."  Zeitz Decl., ¶ 10.  The Allonge referenced the Note dated June 14, 1999 and referenced the Debtor, the Property, the loan amount of $105,600.00, the lender SouthStar Funding and the loan number 0100347609.  [Doc. No. 61-5].  The Allonge is signed by the vice president of SouthStar Funding.  *Id.*

Homecomings Financial was the servicer of the loan for Bank One.  Zeitz Decl., ¶ 14.  Plaintiff failed to meet his obligations under the Original Note as early as March of 2000, and as of October of 2000, the Plaintiff was four months behind on his payments due pursuant to the Original Note.  *Id.* at ¶¶ 12-13.

Bank One transferred its interest in the Property to Residential Funding via an Assignment of Note and Security Deed effective December 1, 2007.  [Doc. No. 61-13].  The Assignment of Note and Security Deed indicates that it was signed on May 2, 2008, but that it was effective on December 1, 2007.  *Id.*  The Assignment of Note and Security Deed states in full:

> FOR VALUE RECEIVED, Bank One, National Association (hereinafter referred to as "Assignor") hereby sells, assigns, transfers, sets over and conveys without recourse unto Residential Funding Company, LLC (hereinafter referred to as "Assignee"), whose address is 1100 Virginia Drive Fort Washington, PA 19034, that certain Security Deed or Deed to Secure Debt executed by Stetson Ndhlovu to SouthStar Funding, L.L.C. and dated June 14, 1999, recorded in Deed Book 928, Page 532, Clerk's Office, Superior Court of Walker County, Georgia, together with the real property therein described; and also the indebtedness described in said Deed and secured thereby, the notes evidencing said indebtedness having this day been transferred and assigned to the said Assignor together with all of Assignee's right, title and interest in and to the said Deed, the property therein described and the indebtedness secured; and the said Assignor is hereby subrogated to all the rights, powers, privileges and securities vested in Assignee under and by virtue of the aforesaid Security Deed or Deed to Secure Debt.
>
> This 2 day of May, 2008 Effective December 1, 2007

*Id.* Two limited signing officers of Bank One signed the Assignment of Note and Security Deed. *Id.* Residential Funding possesses the Original Note, as well as the attached Allonge and has possessed these items since at least November of 2007. Zeitz Decl., ¶ 29.

Following the assignment of the Original Note and Security Deed to Residential Funding, Homecomings Financial continued to service the loan for Residential Funding, until GMAC Mortgage began servicing the loan. Zeitz Decl., ¶ 29.

### B.      The Property Address

The Plaintiff has lived at the Property since October of 1995. [Doc. No. 61-43, Deposition of Stetson Pungwa Ndhlovu ("Ndhlovu Dep."), p. 9]. The record indicates that the Plaintiff testified in his deposition that the subject Property has had two separate addresses, although the physical location of the Property in Walker County, Georgia has remained the same. The Plaintiff testified that the address of the Property at the time of his deposition in this matter was 118 Sasha Lane, Rocky Face Georgia 30740. Ndhlovu Dep., pp. 7-9. The Plaintiff further indicated that the former address for the Property was 1572 Clements Road, Rocky Face, Georgia 30740. *Id.* He indicated that the United States Postal Service required that the name of the road change and that his neighbor named the road Sasha Lane. *Id.* at pp. 7-8. He still receives mail for the Clements Road address on occasion because Sasha Lane is just a driveway with three residences located adjacent to it, but his mailbox is on Clements Road. *Id.* at pp. 7-9. The Plaintiff testified that his recollection was that the address change occurred in 2008. He further indicated that he informed Homecomings Financial that his address had changed to 118 Sasha Lane. *Id.* at p. 14.

### C.      Plaintiff's Payment History and Bankruptcy Filings

The Plaintiff was to begin his payments on the loan in August of 1999. [Doc. No. 61-2, Exhibit A to Exhibit 1]. The Debtor attached a Transaction Report from Homecomings Financial for the period from November 1999 to April of 2007. Plaintiff's Response to Motion for Summary

Judgment, Exhibit 6, [Doc. No. 71("Payment History")].[2]  The Payment History begins with a

transaction for November 2, 1999, which satisfied the Plaintiff's November 2,1999 payment

indicating that there had been no default in the first three payments. The principal balance

corresponding to this transaction also shows a reduction from $105,600 to $105,510.93. (Tr.

10). Showing minor delinquencies, the Payment History shows that the Debtor made his

payments during 2000; and, when appropriate, he made additional payments for late charges

and escrow amounts.  (Tr. 10 -50.)  At the beginning of 2001, the Plaintiff was only one month

behind.  (Tr. 54.) The more serious problems begin the second quarter of 2001 when no

payments are made.  During the last half of the year, the Plaintiff made only two additional

payments, both in August of 2001. The Plaintiff made only five of twelve payments in 2001. The

Payment History also reflects three additional payments labeled as "PMT-MISC SUSP" in the

amounts of $813.61, $212.26 and $219.03.  (Tr. 55, 60 and 77 respectively.) The source of

these payments is not clear; but even giving the Plaintiff credit for these payments, there were

not sufficient funds to have cured the defaults that had occurred during the year. The Payment

History also shows that disbursements were made to pay county taxes of $583.38 and $108.95

for the year. (Tr. 88 and 90.)

Approximately two and a half years after signing the Original Note, on December 3,

2001, Plaintiff filed a bankruptcy petition under chapter 13 in the U.S. Bankruptcy Court for the

Northern District of Georgia, Case No. 01-52171.  [Doc. No. 61-25].[3]  Homecomings Financial

---

[2] Each transaction is designated by a number, which the court will reference as "Tr. #".

[3]  Residential Funding has provided evidence of six  bankruptcy petitions filed by the
Debtor prior to the current case.  [Doc. No. 61-22, Declaration of Austin McMullen ("McMullen
Decl."), ¶ 4].  The evidence in the record includes the docket sheets for the six prior bankruptcy
petitions all filed by the Plaintiff in the United States Bankruptcy Court for the Northern District of
Georgia.  Two were filed prior to the Debtor's execution of the Original Note.  The record reveals
that the Plaintiff filed his first bankruptcy petition, Case No. 94-41031, on May 18, 1994.  [Doc.
No. 61-23] and again on April 29, 1996, Case No. 96-41158.  [Doc. No. 61-24].  The court finds
these two bankruptcies irrelevant to the issues of this Memorandum, and will begin counting the

Network filed a proof of claim in the Plaintiff's 2001 bankruptcy case on January 28, 2002.

[Doc. Nos. 61-6, 61-26, 61-28, 61-59]. The proof of claim indicated a secured claim in the

amount of $118,574.11, including $13,852.59 in arrears at the time of the filing of the case. *Id.*

At that point in time, Defendant claimed the Plaintiff was nine months behind on his $1,096.39

monthly payments. *Id.* at p. 2. The principal balance was $104,887.82 with accrued interest of

$9,701.21. *Id.* The proof of claim itemized other charges, including late charges and

foreclosure attorneys' fees and costs in the amount of $3,985.08. *Id.* It also included a copy of

the Security Deed executed by the Plaintiff on June 14, 1999. *Id.* at pp. 3-4. The docket for the

2001 bankruptcy petition does not indicate that the Plaintiff filed an objection to the proof of

claim filed by Homecomings Financial. *See* [Doc. No. 61-27].

In 2002, the Payment History shows the Debtor received credit for a monthly payment in

February (Tr. 104), two payments in March (Tr. 114, 117), and one in April (Tr. 126). Additional

funds in the amount equal to the monthly payment of $1096.39 were also credited to the Plaintiff

on January 4, 2002, but is reflected as "PMT-MISC SUSP." (Tr. 99.) The court is unable to

identify when the January 4 funds are credited to a monthly payment. There are two other

payments shown as "PMT MISC SUSP" in 2002 and they total $762.36. (Tr. 105 and 119.) As

in 2001, payments were made for county taxes in the amounts of $658.70 and $108.96. (Tr.166

and168.)

The Plaintiff filed his second bankruptcy petition, Case No. 02-41581, in the Northern

District of Georgia Bankruptcy Court on July 1, 2002. [Doc. Nos. 61-29, 61-60]. The record

does not reflect what ended the first bankruptcy filing. On August 23, 2002 Homecomings

Financial filed a proof of claim in the Debtor's second bankruptcy case, Case No. 02-41581.

[Doc. Nos. 61-7, 61-30, 61-61]. The claim amount was for $121,242.55 with the Property listed

---

prior filings only after the Original Note was executed.

as the collateral for the secured claim.  *Id.*  An attachment to the proof of claim indicates that the

Debtor's arrearage as of July 1, 2002, the date he filed his bankruptcy petition, was $16,503.58.

The attachment to the 2002 proof of claim lists eleven delinquent payments for the

period from August 2001 to June 2002, five in the amount of $1,096.39 and six in the amount of

$1,203.84.  *Id.*  The arrearage amounts also include an escrow advance, foreclosure costs

advance, late charges, and a trustee sale advance.  *Id.*  The proof of claim listed the property

address for the secured claim as 1572 Clements Road, Rocky Face, Georgia 30740 and

included a copy of the Security Deed signed by the Plaintiff on June 14, 1999.  [Doc. No. 61-30,

pp. 3-8].  On March 31, 2003 Homecomings Financial filed an amended proof of claim indicating

a new amount owed of $121,773.22.  [Doc. Nos. 61-8, 61-31, 61-62].  The total arrearage

amount was listed as $17,228.58 with $725 included as a bankruptcy advance amount.  *Id.*  The

docket from the Plaintiff's fourth bankruptcy case does not indicate that the Plaintiff filed any

objections to Homecomings Financial's proofs of claim.  *See* [Doc. No. 61-32].     The Payment

History reflects that after the second filing, the Debtor received credit for payments on August

29, 2002 (Tr. 155) and on September 16, 2002 (Tr. 157).  Beginning in 2003, the manner of

accounting for the payments appears to change. The Defendant books most payments received

as "Code 1325 PMT-MISC SUSP." Before crediting the Plaintiff with a monthly payment, there is

a transaction entitled  "Code 2625 MISC ADJ" followed by a transaction "Code 2625

PAYMENT."  For example, on January 29, 2003, the Defendant received $3,400 (Tr. 171) which

it applied to two monthly payments on January 31, 2003 (Tr. 176, 177, 178, 179).  The balance

of the $3400 appears to have remained in what appears to be the MISC SUSP account used by

the defendant to hold unapplied funds for later disbursement for expenses, late charges and

escrows although the court has been unable to determine exactly how the accounting was

handled.  The pattern continues through the end of the Payment History and allows the court to

follow the flow of funds from the Plaintiff or the  Chapter 13 plans to application of those funds to

the monthly payments owed on the Original Note.  With the exception of the amounts for the two

payments mentioned above, the court is able to follow the funds received to credit for loan

payments.

On February 5th and 6th, two additional "PMT-MISC SUSP" payments were received.  (Tr.

180-181.)  One is for $1096.39 and the other is for $972.66. The Debtor receives credit for one

monthly payment (Tr. 184, 185) on February 7, 2003.  An additional MISC payment of $314.95

is received on March 7, 2003.  On April 16, 2003, a transaction entitled Code 2623 MISC ADJ

occurs and a payment for $1203.84 follows.  (Tr. 203.)  The Payment History shows that this

payment was applied to the January 2002 payment. The Payment History reflects that the

Plaintiff was falling further behind.

On June 20, 2003 the Plaintiff filed his third bankruptcy petition, Case No. 03-41904.

[Doc. Nos. 61-34, 61-63].  Once again the record is silent on the reason for the dismissal of the

prior case.  On July 18, 2003 Homecomings Financial filed a proof of claim in the Debtor's fifth

bankruptcy case in United States Bankruptcy Court for the Northern District of Georgia, Case

No. 03-41904.  [Doc. Nos. 61-9, 61-35].  The proof of claim listed an amount of $129,690.40,

including an arrearage of $24,442.89.  *Id.*  "Exhibit A" to the proof of claim indicated that the

Plaintiff was seventeen payments behind and owed $18,638.63 in delinquent mortgage

payments.  *Id.* at p. 2.  Other costs owed by the Plaintiff, including late charges, escrow

advances, and a foreclosure costs advance totaled $5,804.26.  The proof of claim again

included portions of a copy of the Security Deed signed by the Plaintiff.  The docket does not

indicate that the Plaintiff filed an objection to Homecomings Financial's 2003 proof of claim.

[Doc. Nos. 61-36, 61-64].

After this filing, the Payment History shows that the Plaintiff made five of the remaining

six payments due in 2003.  (Tr. 230, 235, 243, 258, 260.)  In 2004, the Debtor made twelve

payments.  In 2005, the Debtor made eleven payments.  Eight of them were for $1,213.67.  The

Payment History reflects that the payment included $117.28 which was applied to an escrow account.

Plaintiff filed his fourth bankruptcy petition on October 13, 2005.  [Doc. No. 61-38, 61-65].  Again, Homecomings Financial filed a proof of claim in the Debtor's bankruptcy case in United States Bankruptcy Court for the Northern District of Georgia, Case No. 05-44331. [Doc. Nos. 61-10, 61-39, 61-66].  Homecomings Financial indicated on this proof of claim that it was filing as the servicing agent for Bank One.  *Id.*  The claim amount listed was $126,114.22, including $23,039.08 in arrears.  *Id.*  "Exhibit A" to the proof of claim indicated that the Plaintiff was eighteen payments behind on his mortgage for a total amount of $19,735.02.  *Id.* at p. 2. The June 14, 1999 Security Deed was included with the proof of claim.  [Doc. No. 61-39, pp. 3-5].  The bankruptcy docket sheet does not indicate that the Plaintiff filed an objection to Homecomings Financial's proof of claim.  *See* [Doc. No. 61-40].

Following the 2005 filing, the Payment History reflects that credit was given for sixteen payments made in 2006.  Lump sums continued to come in as transactions coded as "PMT-MISC SUSP," but credit appears to have been given in the form of monthly payments.  Two payments were credited in January of 2007 and another in February of 2008.  No payments of any kind appear on the Payment History for March of 2007 and only $330 is received in April. (Tr. 711).  The last payment received (Tr. 708) shows it was applied to the October 1, 2005 payment.  Despite substantial efforts during 2004, 2005, and 2006, including making four extra payments in 2006, the Plaintiff never appears to have recovered from the missed payments in 2000 through 2003.

On April 10, 2007 the Georgia bankruptcy court issued an order lifting the automatic stay in favor of Homecomings Financial as the servicing agent for Bank One regarding the Property. [Doc. No. 61-11].  The order authorized Homecomings Financial to "take possession of the Property, or to take action against said Property as necessary in order for the Movant to recover

upon its secured claim to the Property." *Id.*

### D.    Notices of Default and Foreclosure Proceedings Sent to Debtor

The record demonstrates that the Plaintiff received a letter from Homecomings Financial

dated May 7, 2007.  [Doc. No. 61-51]; Ndhlovu Dep., pp. 19, 22.  The letter begins with the

statement that: "[o]ur records indicate the above-referenced mortgage loan is in default."  [Doc.

No. 61-51].  It further states that:

> [t]his is a demand for payment of the total amount due and owing as of the date
> of this letter, which is as follows:

| | | |
|---|---|---|
| Payments ........................................... $ | | 22709.87 |
| Late Charges ....................................... $ | | 931.94 |
| Fees, Costs, and other amounts accrued | | |
| to date ...................................... $ | | 387.00 |
| Suspense ............................................. $ | | 886.93 |
| Total Amount Due ............................... $ | | 23141.88 |

> You may cure the default by paying the total amount due, indicated above, within
> thirty (30) days from the date of this letter. . . .

*Id.*  The second page of the letter states:

> Unless we receive full payment of all past-due amounts, we will accelerate the
> maturity of the loan, declare the obligation due and payable without further
> demand, and begin foreclosure proceedings.  This could result in the loss of your
> property.  You have the right to assert or defend the non-existence of a default
> and you may have other rights under state law.

> Once in foreclosure, you have the right to reinstate your account up to five days
> prior to the foreclosure sale of the property if: 1) you pay the total amount due
> plus any fees, costs and other amounts accrued through the reinstatement date,
> and 2) you take any other action reasonably required by us to assure the security
> of the property, as well as your obligations under the loan documents continue in
> full force and effect.

*Id.* at p. 2.  The Plaintiff admits he received this letter and that he may have visited a friend

named Gail Stanley who was involved in real estate to help him understand the meaning of the

letter.  Ndhlovu Dep., pp. 20-22

The Plaintiff further admits that he received a letter from Homecomings Financial on July

30, 2007 and that he crossed out the address listed and wrote the address "118 Sasha Lane"

on his copy of the letter.  Ndhlovu Dep., p. 23; [Doc. No. 61-52].  The letter indicated that the

Plaintiff's "request for a repayment program to cure the delinquency on [his] account has been

accepted." [Doc. No. 61-52].  The letter further detailed how the payment program would work

and asked the Plaintiff to send payments to a specific address.  *Id.*

A letter dated September 12, 2007 sent by Homecomings Financial to the Plaintiff stated

that the Plaintiff was in default on the loan secured by the Property.  *See* [Doc. Nos. 61-12, 61-

53, 61-70].  It listed the Debtor's address as 11857 Sasha Lane, Rocky Face, GA 30740[4] and

listed the Property address as 1572 Clements Road, Rocky Face, GA 30740.  *Id.*  The letter

indicated that the mortgage loan was in default and that the total amount due on the loan was

$22,264.08.  *Id.*  This letter again warned Plaintiff that Homecomings Financial would begin

foreclosure proceedings unless the Plaintiff paid all past-due amounts.  *Id.*  The Plaintiff admits

that he received a copy of this letter as well.  Ndhlovu Dep., p. 23.  The record demonstrates

that the Plaintiff failed to cure the defaults outlined in the September 12, 2007 letter.  Zeitz

Decl., ¶ 34.

An account statement dated October 18, 2007 from Homecomings Financial indicated

that the Plaintiff had a total amount of $24,625.18 due on his home loan at that time.  [Doc. No.

61-46].  The statement indicated a current payment due of $1,096.39 and an amount past due

of $22,536.88.  *Id.*  The Plaintiff testified in his deposition that he may have seen the October

account statement for the Property.  Ndhlovu Dep., p. 13.

The Defendants have provided evidence in the form of the declaration of attorney Frank

Olson regarding notices pertaining to the collection of the debt owed on the Property and the

---

[4] There is no further indication in the record regarding the reason for the misstatement
of Plaintiff's address as "11857" instead of "118," but there is no evidence in the record
indicating that any envelope containing any letter addressed to the Plaintiff was ever addressed
to "11857" Sasha Lane.  In addition, the Plaintiff admits that he received this letter, even though
the number of the Sasha Lane street address is incorrect on the letter itself.

initiation of foreclosure proceedings.  [Doc. No. 61-15, Declaration of Frank R. Olson ("Olson

Decl.")].  Residential Funding contends that it hired Mr. Olson's law firm, McCurdy & Candler,

L.L.C., to proceed with foreclosure on the Property based on the Plaintiff's failure to cure the

defaults on the Original Note.  *Id.* at ¶ 4; Zeitz Decl., ¶ 34.  It further asserts that the retained law

firm sent a notice of acceleration of the loan to the Debtor on November 15, 2007.  Olson Decl.,

at ¶ 5.  This notice was mailed to the Debtor at 118 Sasha Lane, Rocky Face, Georgia 30740.

*Id.  See also*, [Doc. No. 61-16].

      The November 15, 2007 letter listed Homecomings Financial as the mortgage company

relating to the Property in the heading section of the letter.  *See* [Doc. No. 61-71].  However, the

body of the letter stated in part:

> This law firm represents Residential Funding Company, LLC the creditor on the
> above referenced loan.  This letter is to advise you that we have been retained to
> collect the debt secured by the above-referenced property, which may involve
> foreclosure proceedings against said property.  As of the date of this letter, you
> owe $125,083.16.  Because of interest, late charges, and other charges that may
> vary from day to day, the amount due on the day you pay may be greater.
> Hence, if you pay the amount shown above, an adjustment may be necessary
> after we receive your check, in which event we will inform you before depositing
> the check for collection. . . .

*Id.*  At the end of the letter it warned, in all capital letters, "THIS LAW FIRM IS ACTING AS A

DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION

OBTAINED WILL BE USED FOR THAT PURPOSE."  *Id.*

      During the Plaintiff's deposition, he asserted that he had never seen the November 15,

2007 letter from the law firm of McCurdy & Candler, L.L.C.  Ndhlovu Dep., p. 12.  He further

contended that he never received the letter in the mail.  *Id.*  However, later in his deposition, he

conceded that he had received at least the first page of the letter when he was questioned

regarding documents he had produced in the discovery pertaining to this litigation, one of which

was a copy of the first page of the November 15, 2007 letter.  *Id.* at p. 15.

      Following its initial communication with the Debtor, the law firm sent a second notice to

the Debtor on November 22, 2007.  Olson Decl., ¶¶ 7-11.  This letter provided notice to the

Debtor of a foreclosure sale to be conducted for the Property located at 1572 Clements Road,

Rocky Face, Georgia 30740 on the first Tuesday of January of 2008.  [Doc. No. 61-17].  The

letter stated in part:

> By letter dated November 15, 2007, (the "Initial Communication Letter"), I notified you that the above-referenced lender has referred the referenced loan to this law firm for handling.  That letter also advised you of certain rights (the "Borrowers' Rights" which include your right to validate the debt) you could exercise within 30 days of your receipt of the Initial Communication Letter. Nothing in this letter will prevent you from exercising the Borrowers' Rights as explained in the Initial Communication Letter.

> A failure to comply with the terms of the above loan with Residential Funding Company, LLC has created a default.  As a result, the entire amount of the outstanding balance of the loan has been, and is hereby, declared immediately due and payable.  This letter is a formal demand for immediate payment of the total indebtedness.  Any partial payment received by Residential Funding Company, LLC on the subject debt after the date of this letter will be applied to the reduction of the aforesaid debt and will not result in a reinstatement or a deceleration of the loan.

> Advertisement of foreclosure will be inserted, as provided by law, providing for public sale to be held on the first Tuesday in January, 2008, before the courthouse door of Walker County, Georgia. . . .

> All communication about the loan must now be made through this law firm.  Your lender will no longer accept any payments or communications from you. . . . The lender may be able to allow you to reinstate the loan and stop the foreclosure.  You may call to find out if reinstatement is allowed; and if allowed, to find out the amount of money which you must pay in order to cure the default. If you are allowed to reinstate your loan, payment must be made through our office in the form of certified funds or cashier's check.  Other alternatives the lender may consider are short payoffs, deeds in lieu of foreclosure, restructure of your loan, sale of the lender's loan or some other mutual agreement.  The lender is willing to consider your individual circumstances and will be flexible in its consideration of various alternatives.   This is not meant to indicate that the lender will definitely accept any of the above alternatives as your loan has been accelerated and foreclosure proceedings will continue.  I urge you to contact the undersigned immediately regarding your situation. . . .

*Id.*

The notice sent to the Debtor also included a Notice of Sale Under Power which was a

copy of the advertisement to be published relating to the public sale of the Property.  [Doc. No.

61-17, p. 3].  Residential Funding contends that it mailed the November 22, 2007 letter to both

the 118 Sasha Lane and the 1572 Clements Road addresses via certified mail.  Olson Decl., ¶¶

9-10.  [Doc. No. 61-18].  The Plaintiff testified that he did not remember receiving the November

22, 2007 letter from McCurdy & Candler, L.L.C.  Ndhlovu Dep., p. 15.  He further testified that

he did not remember receiving any notices from the post office indicating that there was a

certified letter waiting for him there.  *Id.* at pp. 15-18.  He asserted that he would not have left a

notice of a certified letter in the mailbox and that if he had received such a notice, he would

have retrieved the letter from the post office.  *Id.* at p. 18.

Mr. Olson received a notification from the United States Postal Service that the Plaintiff

did not claim the two separate November 22 notices.  Olson Decl., ¶ 13, [Doc. No. 61-19].  The

record reveals two certified receipts returned to the sender as "unclaimed" after two notices

were provided to the Plaintiff at each separate address.  [Doc. No. 61-19].

At some point in 2007, the Plaintiff attempted to send a cashier's check for $2,600 to

Homecomings Financial.  *See* Ndhlovu Dep., p. 51.  The Plaintiff admits that he received a letter

from Homecomings Financial on November 29, 2007 pertaining to the return of funds.  Ndhlovu

Dep., p. 51; [Doc. No. 61-55].  He asserts that he discussed the letter and the cashier's check

with his attorney.  Ndhlovu Dep., pp. 51-54.  The letter states in part:

> Enclosed please find cashier check 371074 in the amount of $2,600.00.
> These funds do not represent the full amount due to reinstate your account at
> this time.
>
> Your account has been transferred to our attorney to begin foreclosure
> proceedings.  Additional fees and costs have incurred.  If it is your intent to
> reinstate your account in full, please contact the attorney below for the
> reinstatement amounts.  Only the correct amount in the form of certified funds will
> be acceptable.

[Doc. No. 61-55].  The letter included an address for a law firm and provided a telephone

number for the Loss Mitigation Department at Homecomings Financial to discuss alternatives to

foreclosure.  *Id.*  The Plaintiff was not sure whether the letter contained the cashier's check, but

he asserted that he provided any returned money to his attorney to return to the lender.

Ndhlovu Dep., pp. 27-29, 51-53.

In his response and amended response, as well as his response to the Defendants'

statement of undisputed facts, the Plaintiff claims that an issue of material facts exists regarding

whether he was in default on the Original Note.  He claims that the Defendants failed to allocate

his payments properly.  *See e.g.* [Doc. No. 73, Plaintiff's Response to Defendant's Statement of

Undisputed Facts, No. 15].  He has provided the court with evidence of his Payment History on

the Original Note pertaining to the Property.  *See* [Doc. No. 71-6, Payment History].  The

Plaintiff further claims that the Defendants' financial records reveal mysterious amounts charged

to him and that a trial is necessary to determine whether the Defendants properly allocated his

payments.

### E.      Publication of Notice of Sale Under Power

The record includes an affidavit of publication from the publisher of the *Walker County*

*Messenger* that indicates that a notice of sale under power was published in the *Walker County*

*Messenger* on December 5, 2007, December 12, 2007, December 19, 2007, and December 26,

2007.  [Doc. No. 61-42].  Mr. Don Stillwell, the publisher, signed the affidavit on June 13, 2008.

The affidavit also contains a copy of the advertisement that was published in the newspaper.

*Id.*

### F.      Foreclosure on the Property

In his belated response to the motion for summary judgment, the Plaintiff asserts that

there is no evidence that the foreclosure sale ever occurred on January 2, 2008.  He later

supplied the court with evidence of the deposition transcript of Mr. Frank Olson regarding the

details of the foreclosure sale on the Property.  [Doc. No. 71-2, Telephone Deposition of Frank

Olson ("Olson Dep.")].  In his deposition, Mr. Olson testified that he represented Residential

Funding, but that he did not actually conduct the foreclosure sale on the property himself.

Olson Dep., pp. 7, 10-11.  He did not remember "offhand" who conducted the sale because he

forgot with whom the firm usually contracted in Walker County for foreclosure sales.  *Id.* at pp.

7-8.

Although the Plaintiff suggests in his response and amended response that the

foreclosure sale did not occur on January 2, 2008, the record reveals that Residential Funding

purchased the Property on that day at a public foreclosure sale on the courthouse steps in

Walker County, Georgia for a purchase price of $83,300.  In their reply to the Plaintiff's

responses, the Defendants supplied the court with a declaration of the individual who conducted

the foreclosure sale on the Property, as well as a copy of the relevant Bid Sheet pertaining to

the Foreclosure Sale on the Property.  [Doc. No. 69-1, Declaration of Kellie Maples in Support of

Motion for Summary Judgment ("Maples Decl."); Doc. No. 69-2, Bid Instruction Sheet].  The

declaration of Ms. Kellie Maples states in relevant part that Ms. Maples "was the employee who

performed the foreclosure sale cry, in connection with the foreclosure, on behalf of Residential

Funding Company, LLC ("RFC") of certain real property (the "Subject Property") formerly owned

by Stetson Pungwa Ndhlovu . . . ."  Maples Decl., ¶ 2.  Ms. Maples further asserts:

> RFC and McCurdy & Candler retained BridgeWater to conduct the foreclosure
> sale of the Subject Property after McCurdy & Candler gave notice of the
> foreclosure.
>
> On January 2, 2008, at 10:07 a.m., I conducted the foreclosure sale of the
> Subject Property.  I conducted the foreclosure sale at the Walker County,
> Georgia, Courthouse.  At the foreclosure sale, the highest bid made was made
> by [Residential Funding] in the amount of $83,300.

*Id.* at ¶¶ 4-5.  The Bid Instruction Sheet indicates that the sale was concluded at 10:07 a.m. and

that Residential Funding purchased the Property.  *See* Bid Instruction Sheet.

The Foreclosure Deed evidencing the sale of the Property from Residential Funding to

Residential Funding states that "[n]otice of the foreclosure sale as required by Georgia Law in

the form of a copy of the Notice of Sale submitted to the publisher was provided to the debtor at

least fifteen (15) days prior to the foreclosure sale on January 2, 2008." *Id.*  The Foreclosure

Deed lists Homecomings Financial Loan No. 7800729915 and the Debtor.  It was filed on May

27, 2008 in Walker County Georgia Superior Court in Book 1556 at pages 736 through 738.  Mr.

Olson did not know the reason for the delay in recording the foreclosure deed.  Olson Dep., pp.

9-10.  The Assignment of Note and Security Deed transferring the Property from Bank One to

Residential Funding was filed in Walker County Superior Court on the same day in Book 1556

on page 735.  [Doc. No. 61-13].  The assignment is dated May 2, 2008, but states in handwriting

next to the date, "Effective December 1, 2007." *Id.*

**II.      Jurisdiction**

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this

district provide this court with jurisdiction to hear and decide this adversary proceeding.  The

Plaintiffs' action regarding the administration of the estate and his alleged wrongful foreclosure

are core proceedings.  *See* 28 U.S.C. § 157(b)(2)(A); *see also In re Bland*, 252 B.R. 133 (Bankr.

W.D. Tenn. 2000) (determining validity of foreclosure sale was a core proceeding pursuant to 28

U.S.C. § 157(b)(2)(A)).

**III.     Standard of Review**

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56

applicable to bankruptcy adversary proceedings.  *See* Fed. R. Bank. P. 7056.  Summary

judgment is appropriate if there is no genuine issue as to any material fact and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden is on the moving

party to show conclusively that no genuine issue of material fact exists, and the Court must view

the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving

party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v.

Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n,

Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435

(6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

## IV.      Analysis

The Property is located in Georgia, and the Plaintiff's Security Deed was recorded in Walker County, Georgia. Therefore, Georgia law applies to determine whether the Plaintiff was provided proper notice of the foreclosure sale by Defendants.

### A.      The Security Deed Was Properly Assigned to Residential Funding

Plaintiff's Complaint asserts that the Security Deed he signed with SouthStar Funding was never properly assigned to Residential Funding. Georgia law provides that: "If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." GA. CODE ANN. § 11-3-205(b).

The Original Note provides that the Plaintiff "understand[s] that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under the Note is called the 'Note Holder.'" [Doc. No. 61-2]. The Security Deed also provided that it might be transferred. *See* [Doc. No. 61-3]. Paragraph 19 of the Security Deed

states that "[t]he Note or a partial interest in the Note (together with this Security Instrument)

may be sold one or more times without prior notice to Borrower." *Id.*

The record reveals that SouthStar Funding assigned the Security Deed to Bank One and

that Bank One, in turn, assigned its interest in the Security Deed to Residential Funding. *See*

[Doc. Nos. 61-4, 61-13]. Residential Funding has been in possession of the Original Note and

the attached Allonge since at least November of 2007. *See* Zeitz Decl., ¶ 29. Thus, Residential

Funding, by possessing the Note and the Allonge which has been endorsed "in blank," is the

holder of the Note. *See* GA. CODE ANN. §§ 11-3-205(b), 11-1-201(5). *See also, Dewberry v.*

*Bank of America (In re Dewberry)*, No. 10-60155-WLH, 2010 WL 4882016, at *2 (Bankr. N.D.

Ga. Oct. 21, 2010) (noting that "[t]he Note was endorsed in blank by [the mortgage corporation],

thereby making it payable to bearer. As such, it could be negotiated by transfer of possession

alone") (citations omitted).

Although the assignment of the Security Deed was not filed until after the foreclosure

sale, Georgia law at the time of the foreclosure sale provided that such recording could occur at

any time. The relevant statute states:

> Every bond for title, bond to reconvey realty, contract to sell or convey realty or
> any interest therein, and any and all transfers or assignments of realty shall be
> filed and recorded in the office of the clerk of the superior court of the county
> where the land referred to in the instrument is located. The filing and recording
> shall, from the date of filing, be notice of the interest and equity of the holder of
> the instrument in the property described therein. The filing and recording may be
> made at any time; but such bond for title, bond to reconvey realty, contract to sell
> or convey realty or any interest therein, and any transfer or assignment of realty
> shall lose its priority over deeds, loan deeds, mortgages, bonds for titles, bonds
> to reconvey realty, contracts to sell or convey realty or any interest therein and
> any transfer or assignment of realty from the same vendor, obligor, transferor, or
> assignor which is executed subsequently but filed for record first and is taken
> without notice of the former instrument.

GA. CODE ANN. § 44-2-6. Although the Georgia legislature subsequently amended a different

statute to require recording of the assignment of a Security Deed prior to the foreclosure of the

property, at the time of the foreclosure sale at issue in this adversary proceeding, the law had

not yet been amended.  *See* GA. CODE ANN. § 44-14-162(b) (requiring that "[t]he security

instrument or assignment thereof vesting the secured creditor with title to the security instrument

shall be filed prior to the time of sale in the office of the clerk of the superior court of the county

in which the real property is located").  This statutory provision became effective on May 13,

2008.  *See* 2008 Ga. Laws, Act 576, § 1, eff. May 13, 2008.

### B.  Defendants' Compliance with Georgia Foreclosure Laws and the Security Deed

Georgia law outlines how foreclosure sales must be conducted to provide appropriate

notice to borrowers of such foreclosures.  At the time of the foreclosure sale at issue here, on

January 2, 2008, Georgia law provided:

> No sale of real estate under powers contained in mortgages, deeds, or other lien contracts shall be valid unless the sale shall be advertised and conducted at the time and place and in the usual manner of the sheriff's sales in the county in which such real estate or a part thereof is located and unless notice of the sale shall have been given as required by Code Section 44-14-162.2.  If the advertisement contains the street address, city, and ZIP Code of the property, such information shall be clearly set out in bold type.  In addition to any other matter required to be included in the advertisement of the sale, if the property encumbered by the mortgage, security deed, or lien contract has been transferred or conveyed by the original debtor to a new owner and an assumption by the new owner of the debt secured by said mortgage, security deed, or lien contract has been approved in writing by the secured creditor, then the advertisement should also include a recital of the fact of such transfer or conveyance and the name of the new owner, as long as information regarding any such assumption is readily discernible by the foreclosing creditor.  Failure to include such a recital in the advertisement, however, shall not invalidate an otherwise valid foreclosure sale.

GA. CODE ANN. § 44-14-162 (2001).[5]  Georgia Code Annotated § 44-14-162.2, in turn, stated in

January of 2008:

> (a) Notice of the initiation of proceedings to exercise a power of sale in a

---

[5]  The Georgia legislature amended this statute in 2008, after the date of the foreclosure sale of the Property.  The revised statute made the former version of the statute subsection (a) of the statute and added a subsection (b).  *See* 2008 Ga. Laws, Act 576, § 1, eff. May 13, 2008.

mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 15 days before the date of the proposed foreclosure.  Such notice shall be in writing and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor.  *The notice required by this Code section shall be deemed given on the official postmark day or day on which it is received for delivery by a commercial delivery firm.*

(b) The notice required by subsection (a) of this Code section shall be given by mailing or delivering to the debtor a copy of the published legal advertisement of a copy of the notice of sale submitted to the publisher.

GA. CODE ANN. § 44-14-162.2 (2001) (emphasis added).[6]

Georgia law also contains certain provisions relating to how sales of foreclosed properties must be advertised and conducted.  For example, Georgia law requires that notices of land sales must be published in a local newspaper for four weeks prior to the sale.  The statute requires:

The sheriff, coroner, or other officer shall publish weekly for four weeks in the legal organ for the county, or if there is no newspaper designated as such, then in the nearest newspaper having the largest general circulation in such county, notice of all sales of land and other property executed by the officer.  In the advertisement the officer shall give a full and complete description of the property to be sold, making known the names of the plaintiff, the defendant, and any person who may be in the possession of the property.  In the case of real property, such advertisement shall include the legal description of such real property and may include the street address of such real property, if available, but provided that no foreclosure shall be invalidated by the failure to include a street address or by the insertion of an erroneous street address.

GA. CODE ANN. § 9-13-140(a).  Georgia law also specifies how such foreclosure sales should occur:

Unless otherwise provided, sales of property taken under execution shall be made by the sheriffs or coroners only at the courthouse of the county where the levy was made on the first Tuesday in each month, between the hours of 10:00

---

[6] This statute was amended in 2008 by 2008 Ga. Laws, Act 576, which changed the 15 day notice period to 30 days and provided additional language in subsection (a).  It also substituted the words "notice of sale to be" for "published legal advertisement or a copy of the notice of sale."  2008 Ga. Laws, Act 576, § 2, eff. May 13, 2008.

A.M. and 4:00 P.M., and at public outcry; provided, however, that, should the first Tuesday of the month fall on New Year's Day or Independence Day, such sales shall take place on the immediately following Wednesday.  A change in the time of such sales from the first Tuesday of the month to the first Wednesday of the month as provided in this subsection shall also apply to all public sales within the county required to be conducted at the time of the sheriff's sales.

GA. CODE ANN. § 9-13-161(a).

The Security Deed itself also provides requirements for how notice of a forced sale must

be provided.  [Doc. No. 61-3].   Paragraph 21 of the Security Deed states:

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 17 unless applicable law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender, . . . may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. . . .

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 14 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law.  Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale. . . . Lender or its designee may purchase the Property at any sale.

Security Deed, ¶ 21.  The Security Deed also required that notice be provided to the borrower

"by delivering it or by mailing it by first class mail unless applicable law requires use of another

method."  *Id.* at ¶ 14.  Pursuant to the Security Deed, any notice was to be provided to the

Property address or another address designated by the borrower.  *Id.*

The undisputed record reveals the following notices of deficiency were sent to the

Plaintiff: (1) May 7, 2007 letter to Plaintiff from Homecomings Financial [Doc. No. 61-51];

Ndhlovu Dep., pp. 19-22; (2) July 30, 2007 letter to Plaintiff from Homecomings Financial [Doc. No. 61-43]; Ndhlovu Dep., p. 23; (3) September 12, 2007 letter to Plaintiff from Homecomings Financial [Doc. No. 61-12]; Ndhlovu Dep., p. 23; (4) November 15, 2007 letter to Plaintiff from law firm of McCurdy & Candler, L.L.C. [Doc. No. 61-71]; (5) November 22, 2007 letter to Plaintiff from law firm of McCurdy & Candler, L.L.C. [Doc. No. 61-17].

The Plaintiff admits that he received the May 7, 2007 letter, the July 30, 2007 letter, and the September 12, 2007 letter.  Ndhlovu Dep., pp. 20-23.  He further admits that he may have seen an account statement dated October 18, 2007 indicating that he owed $24,625.18 on his home loan.  *Id.* at p. 13.  Although the Plaintiff denied receiving the November 15, 2007 letter from the law firm, upon additional questioning, he admitted that he had produced a copy of the letter during discovery and that he must have received at least the first page of the letter.  *See id.* at pp. 12, 15.  The record reveals that the U.S. Postal Service returned the November 22, 2007 letter to the law firm as unclaimed.  Olson Decl., ¶ 13; [Doc. No. 61-19].  These letters all provided the Plaintiff with notice of the deficiencies on his home loan and of the possibility of foreclosure proceedings.  These letters and notices comply with the requirements of GA. CODE ANN. § 44-14-162.2.  They further comply with the notice specifications of Paragraph 21 of the Security Agreement.  *See e.g.* [Doc. No. 61-51] (providing notice of default, action required to cure default, date by when default must be cured, failure to cure may result in acceleration, the Plaintiff's right to reinstatement, and his right to additional defenses).

Although the Plaintiff did not claim the November 22, 2007 certified letter, the statute states that the notice "shall be deemed given on the official postmark day or day on which it is received for delivery by a commercial delivery firm."  GA. CODE ANN. § 44-14-162.2(a).  Thus, the statute contemplates that a borrower may refuse to claim a notice, but that a lender should not be hindered in its ability to foreclose due to a borrower's attempt to thwart the notification process.

Further, notices were sent to both the Plaintiff's address at Clements Road and the address at Sasha Lane.  The Plaintiff testified in his deposition that he did not inform Homecomings Financial of the address change until sometime in 2008.  Ndhlovu Dep., p. 14. Thus, the notices further complied with GA. CODE ANN. § 44-14-162.2(a) and Paragraph 14 of the Security Deed.

With respect to the requirements of publication of the foreclosure sale under Georgia law and in the Security Deed, the undisputed record further reveals that Residential Funding and Homecomings Financial complied with publication requirements.  The November 22, 2007 letter contained a copy of a Notice of Sale Under Power that was a copy of an advertisement to be published in the Walker County newspaper that pertained to the foreclosure sale of the Property.  *See* [Doc. No. 61-17].   The Defendants' provision of the copy of the advertisement to the Plaintiff complied with GA. CODE ANN. § 44-14-162.2 and Paragraph 21 of the Security Deed.

The Notice of Sale Under Power provided the name of the lenders, the Plaintiff, the Property address and its legal description.  [Doc. No. 61-17, p. 3].  The Notice further indicated that the date of the sale would be on the first Wednesday of January 2008 at the courthouse door in Walker County, Georgia with the Property to be sold at public outcry.  *Id.*  These statements meet the requirements of GA. CODE ANN. § 9-13-140(a).  The record further includes an affidavit of publication indicating that the Notice of Sale Under Power was published on four different occasions in the *Walker County Messenger* on December 5, 2007, December 12, 2007, December 19, 2007, and December 26, 2007.  [Doc. No. 61-42].  These four publications further meet the requirements of GA. CODE ANN. § 9-13-140(a).

The foreclosure sale proceeded in accordance with GA. CODE ANN. § 9-13-161(a) on the first Wednesday of January, as the first Tuesday of the month was New Year's Day.  *See* GA. CODE ANN. § 9-13-161(a) (providing that "should the first Tuesday of the month fall on New

Year's Day . . . , such sales shall take place on the immediately following Wednesday"). The

record reveals that Ms. Kellie Maples conducted the foreclosure sale on the courthouse steps,

and that Residential Funding purchased the Property at the public sale at 10:07 a.m. *See*

Maples Decl., Bid Sheet. Mr. Olson's testimony in his deposition does not contradict his

declaration; he merely testified that he could not remember with whom McCurdy & Candler

contracted to conduct the foreclosure sale. The declaration of Ms. Maples satisfies the court

that the foreclosure did indeed occur in accordance with Georgia law on January 2, 2008. The

Plaintiff has presented no admissible evidence suggesting otherwise. The Plaintiff has raised

no genuine issue of material fact regarding whether Residential Funding or Homecomings

Financial complied with the requirements for a foreclosure sale under either Georgia law or the

terms of the Security Deed.

### C.      Plaintiff's Argument Regarding Whether He Was in Default

In his responses to Defendants' motion for summary judgment and his response to the

Defendants' statement of undisputed facts, the Plaintiff's argues that a genuine issue of material

fact exists regarding whether he had defaulted on his obligations under the Note. He asserts

that the Defendants did not properly allocate his payments.

Plaintiff alleges that the Defendants failed properly to credit his account with payments

that he made. He further contends that the Defendants added in additional charges in breach of

the Security Deed. Residential Funding has provided evidence that it bought the Property at the

foreclosure sale for $83,300. [Doc. 61-14]. However, the proofs of claim filed in Plaintiff's

bankruptcy cases demonstrate an indebtedness ranging from $118,574.11 to $129,690.40.

Although in his deposition the Plaintiff suggested that he had attempted to provide $2,600 in

payments to Homecomings Financial via cashier's check, he admits that the cashier's check

was returned to him. Ndhlovu Dep., pp. 27-29, 51-53. He indicates that he gave the money

back to his lawyers to provide to the Defendants. Beyond evidence of one attempted $2,600

payment via cashier's check, there is no evidence of any additional payments made by the Plaintiff to repay any arrearage owed on his home mortgage once the Plaintiff began receiving the notices of default in May of 2007.

The Plaintiff has provided no evidence of any payments to either Residential Funding or Homecomings Financial that would have fulfilled his obligations under the Security Deed or would have repaid any past amounts owed in full. He did not provide any evidence of waiver of any of the prior defaults.  The only payment the Plaintiff attempted to make after May of 2007 was the amount of $2,600.  There is no evidence in the record suggesting that this amount would have cured the arrearage due on the loan as noted in the bankruptcy proofs of claim filed in 2001 through 2005 or in the notices of default sent in 2007.

 Further, Plaintiff's contention that he did not receive appropriate credit for his payments is weakened by his repeated  failure to object to the Defendants' proofs of claim filed in his four of bankruptcy proceedings.  *See* 11 U.S.C. § 502(a) (claim of interest is allowed where proof is filed and party in interest fails to object); *see also, United States v. Camp Coast to Coast, Inc.*, 424 B.R. 251, 259 (N.D. Ohio 2010).

Finally, upon extensive review of the Payment History provided by the Plaintiff, the court concludes that the Plaintiff's contentions regarding the proper allocation of his payments are insufficient to overcome the Defendant's proof that a default existed.  Plaintiff's argument assumes that, from the date a mortgage payment was due to his receipt of the first notice of default letter in May of 2007, he was making timely and full monthly payments on his mortgage. At a minimum, his argument that no default exists requires that the sum of the payments actually made over the course of the loan exceeds the sum of the payments due over the same period.  To the extent that they do not, he must show that the Defendants waived the default. No such showing has been made.

Construing the facts in the light most favorable to the Plaintiff, the Payment History

reveals the Defendant credited his account with seventy-five (75) payments totaling $82,229.25 during those almost eight years. Of these, three were paid prior to the start of the Payment History, eighteen were directly credited as payments, and fifty-four were the result of crediting the payments received from transactions coded as PMT-MISC SUSP. However, during this period of time, ninety-three (93) loan payments were due and payable by the Plaintiff under his fixed-rate, twenty-year loan. When the number of monthly payments is multiplied by the amount of Plaintiff's monthly payment of $1096.39, the Plaintiff should have paid at least $98,675.10 on his home loan during this eight year period. Even when all of the PMT-MISC SUSP transactions not credited to monthly payments or tax payments are added to amounts credited to monthly payments, the Plaintiff still falls short. The shortfall is even greater when insurance required by the Security Deed and the late charges allowed by the Original Note are added. The Original Note also allowed the Defendant to recover its costs and expenses including attorney fees. None of these additional charges were ever mitigated by a completed chapter 13 plan. Although Plaintiff made many payments on his home loan over the years, once he fell substantially behind on his payments, beginning in October of 2000, he never made enough additional payments to catch up the missed payments. Despite four tries, he never succeeded in curing the arrearage by completing a bankruptcy plan. The Payment History reveals that by the time the Plaintiff made his last payment in February of 2007, he was so far behind on his monthly payments that the February 2007 payment satisfied the payment which should have been made in October of 2005. *See* Payment History, p. 36 (Tr. 708). The court concludes that there is no genuine issue of material fact regarding whether the Plaintiff was in default on his mortgage loan with Defendants.

Therefore, the Defendants' motion for summary judgment regarding Plaintiff's breach of contract and wrongful foreclosure claims will be GRANTED.

### D.      Alleged Violation of Georgia's FBPA

In his Complaint, the Plaintiff brings a claim for violation of the Georgia FBPA.  Such a

claim requires proof of a violation of the Act, causation and injury.  *See Weinstock v. Novare*

*Group, Inc.*, __ S.E.2d ___, 2011 WL 1107023, at *6 (Ga. Ct. App. Mar. 28, 2011).  "Private

actions, for treble damages, are authorized under the Act, so long as the alleged violation

involves 'the breach of a duty owed to the consuming public in general' and therefore has at

least some potential 'impact on the consumer marketplace.'" *Johnson v. GAPVT Motors, Inc.*,

663 S.E.2d 779 (Ga. Ct. App. 2008) (quoting *Brown v. Morton*, 617 S.E.2d 198 (Ga. Ct. App.

2005)).

Plaintiff contends in his Complaint that the Defendants caused confusion and acted in an

unfair or deceptive manner.  Complaint, ¶ 26.  He asserts that he never received a notice of

sale, notice of acceleration, a notice of the right to cure, and there was no assignment to

Residential Funding.  *Id.* at ¶ 27.  The undisputed record demonstrates that the Plaintiff received

several notices from the Defendants regarding his default on the Security Deed.  *See* [Doc. Nos.

61-51 through 61-53, 61-46, 61-71 through 61-74].  Further, the Original Note indicated that

SouthStar Funding could transfer the note.  [Doc. No. 61-2].  The record further reveals that

SouthStar Funding assigned its interest to Bank One, which then transferred all of its interest to

Residential Funding.  *See* [Doc. Nos. 61-4, 61-13].

Although the Plaintiff complains that the Defendants proceeded to foreclosure as quickly

as possible, the record reveals that Homecomings Financial sent the first notice of default in

May of 2007 and the Defendants followed that notice with four other letters over the course of

several months in 2007.  The foreclosure sale did not occur until January 2, 2008.  Moreover,

the Plaintiff avoided foreclosure several times merely by continuing to file successive

bankruptcy petitions, four following the date of the Original Note, in the United States

Bankruptcy Court for the Northern District of Georgia.

Under the Georgia FBPA, a plaintiff must demonstrate a necessary public policy interest at stake. *See Magliaro v. Pedrick*, 417 S.E.2d 395, 398 (Ga. Ct. App. 1992). As one Georgia court explained the purpose of the FBPA, "while the aggrieved party is given a private remedy under the statute, it is important to note that the stated intent of the FBPA is to protect the public from acts and practices which are injurious to consumers, not to provide an additional remedy for private wrongs which do not and could not affect the consuming public generally." *Zeeman v. Black*, 273 S.E.2d 910, 913 (Ga. Ct. App. 1980). The court further explained:

> we find that suits brought pursuant to Code Ann. § 106-1210 must serve the public interest and implement the purpose of the FBPA the end to unfair or deceptive acts or practices in the public consumer marketplace. While a suit under Code Ann. § 106-1210 is brought in a plaintiff's individual capacity, it must be in his capacity as an individual member of the consuming public who has suffered damage as the result of an unfair or deceptive act or practice which had or has potential harmful effect on the general consuming public. One may bring a private suit under the FBPA only if he is individually injured by the breach of a duty owed to the consuming public in general. Code Ann. § 106-1210 does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction.

*Id.* at 914-915.

There is nothing in the record indicating that the injuries allegedly suffered by the Plaintiff were suffered by the consuming public as a whole. Nor is there any evidence that the Defendants acted in any deceptive or unfair manner. The record demonstrates that the Plaintiff received several notices of his default and the resulting foreclosure proceedings in accordance with Georgia law and the Security Deed. In addition, the foreclosure sale was advertised in accordance with Georgia law. Plaintiff received even more time to attempt to cure his defaults than he otherwise would have enjoyed due to his successive filing of bankruptcy petitions. The court concludes that the Plaintiff has failed to demonstrate the necessary elements of an FBPA claim. For these reasons, the Defendants' motion for summary judgment on the FBPA claim will be GRANTED and the Plaintiff's FBPA claim will be DISMISSED.

### V.      Conclusion

For the reasons stated *supra*, the court concludes that the Defendants' motion for summary judgment will be **GRANTED**.  The Plaintiff's claims for breach of contract, wrongful foreclosure, and for violation of the Georgia FBPA will be **DISMISSED** with prejudice.

A separate order will enter.

# # #